R.E.T. CORPORATION, a corporation
and Hamilton Glen (Phase II), a
limited partnership, Appellees,

v.

FRANK PAXTON COMPANY, INC., a
corporation, d/b/a Frank Paxton Lumber Co., and Paxton Prestige Homes,
Appellants.

No. 67470.

Supreme Court of Iowa.

Jan. 19, 1983.

Rehearing Denied Feb. 10, 1983.

Donald R. Breitbach and Randal J. Nigg, of Reynolds, Kenline, Breitbach, McCarthy, Clemens, McKay & Nigg, Dubuque, for appellants.

William C. Fuerste and Robert L. Sudmeier of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, and James R. Hamilton and Willis J. Hamilton of Hamilton Law Firm, P.C., Storm Lake, for appellees.

Considered by LeGRAND, P.J., and UHLENHOPP, HARRIS, McGIVERIN, and CARTER, JJ.

HARRIS, Justice.

Defendant-builder and two architects were sued on a claim they had breached a building contract, express and implied warranties, and were negligent in supplying defective exterior wall components with factory affixed insulation. The trial court found defendant-builder liable to the plaintiff in the amount of $992,878.84 plus interest. Although the two architects were found negligent the trial court found their negligence was not a concurrent cause of plaintiff's injury. The defendant-builder has brought this appeal. We affirm.

In 1972 plaintiff [1] built a 72 unit apartment complex in Dubuque, Iowa, named

---

1. There are actually two plaintiffs: R.E.T. Cor-    poration and Hamilton Glen (Phase II). R.E.T.

Hamilton Glen Phase I. The insulation in those apartments was installed on the construction site. The apartments were gas heated. Defendant provided the empty exterior wall components.

The venture proved an economic success so R.E.T. decided to build a second apartment complex on the same tract, to be called Hamilton Glen Phase II. The eight buildings of Phase II were to differ from Phase I in two respects. The insulation in Phase II buildings was to be shop-installed at defendant's Des Moines plant. And Phase II would have electric rather than gas heat. Plaintiff acted as its own general contractor on both projects.

The Phase II construction called for three and one-half inch reverse flange insulation in the exterior wall components. "Full thickness" insulation was specifically required in all exterior walls. The trial court found that the three and one-half inch reverse flange insulation was not used by defendant, that the exterior walls were not of full thickness, and that the insulation was not installed in such a way as to utilize the full thickness of the insulation used. Defendant apparently used mineral wool insulation batts that varied in thickness from two and one-half to three inches. The insulation was not stapled at the top or the bottom of the cavity. In one of the four units examined the insulation measured 2.12″ at its thickest point down to 0 at the site of the stud. The R-value was estimated to be 7 or less.

When apartments for Phase II were first opened in January of 1975 the tenants immediately complained of cold apartments and high heating bills. Plaintiff had an independent builder rip off an exterior wall covering to investigate. Plaintiff was told that lack of insulation was causing the problem. An engineer was called to inspect four apartments and concluded that retrofitting was necessary. Defendant denied anything was wrong. Plaintiff consulted with numerous experts and explored various ways to retrofit the walls economically. In August of 1977 a local insulation company was hired to blow foam insulation into the walls. This proved to be a mistake because the odor was most offensive and a number of sheet rock panels were blown off the interior walls.

In September of 1977 another local company successfully drilled holes in an apartment and blew cellulose insulation into the stud cavities. Plaintiff then purchased the necessary equipment and, using its own employees, retrofitted all the Phase II apartments. After the retrofitting was completed the tenants' complaints dropped. By this time, however, the complex was in serious financial trouble.

The tenants' complaints had forced the management to offer rent inducements and adjust the rents of complaining tenants. Vacancies increased and plaintiff could not increase its rents to cover its increasing costs. Although Phase I of Hamilton Glen had been a financial success the difficulty with Phase II resulted in the ultimate failure of Hamilton Glen (both Phase I and Phase II). The business went into receivership and the property was ultimately sold at a substantial loss.

The trial court found that defendant had breached its contract with plaintiff, breached both express and implied warranties, and negligently installed the insulation it used. It specifically found that this financial disaster would not have occurred in the absence of the breaches and negligence found. The trial court awarded damages of $105,344.26 for repair costs, $237,534.58 for lost rents, and $650,000 as the difference between the fair market value of the property (that the sale should have realized) and the reduced price (finally obtained). Damages totalled $992,878.84.

I. This was a law action tried to the court and hence it is reviewed for cor-

is an Illinois corporation authorized to do business in Iowa and is a general partner in Hamilton Glen (Phase II), which is a limited partnership. R.E.T. is a closely held private corporation. Where appropriate we shall for simplicity refer to the plaintiffs in the singular. References to the defendant will be to the appealing defendant Frank A. Paxton Company, a Delaware corporation authorized to do business in Iowa.

rections of error of law. Iowa R.App.P. 4. The trial court's findings of fact have the force of a special verdict and are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We view the evidence in the light most consistent with the judgment. Our deference to the trial court's finding of facts does not extend to its determinations of law. *Blunt, Ellis & Loewi, Inc. v. Igram,* 319 N.W.2d 189, 192 (Iowa 1982).

II. Defendant first challenges the factual findings that it breached its contract, as well as express and implied warranties, and was negligent in installing the insulation and that these failures were the proximate cause of plaintiff's damage. The question is whether substantial evidence supports the findings. As is customary in such disputes, the evidence was conflicting; there was evidence to support the contentions of both plaintiff and defendant. The trial court obviously believed plaintiff's evidence and rejected much of defendant's.

Although defendant offered considerable evidence to refute plaintiff's there was plainly a factual issue for the finder of fact to resolve. Evidence supporting the trial court's finding included witnesses who examined the four apartments and their testimony that they were "representative of what we could expect to see" in the others. Only Phase II tenants, not Phase I tenants, complained about high heating bills. The Phase II turnover rate was 35 percent while the Phase I turnover rate was 12 to 14 percent. Tenants' complaints went down after retrofitting was completed. Electric bills were 10 to 30 percent lower after retrofitting. Both properties became rundown because they were losing money. Phase I money was used in an attempt to rescue Phase II. Rent reductions had to be offered to keep tenants from moving. Phase I suffered from the tarnished reputation of its sister-complex.

Evidence can be contradictory and remain substantial. *See Schiltz v. Cullen-*

*Schiltz & Assoc., Inc.,* 228 N.W.2d 10, 18 (Iowa 1975). The trial court's findings were supported by substantial evidence and defendant's contention to the contrary is without merit.

III. Defendant next contends the trial court was wrong in absolving plaintiff of contributory negligence. We could but we choose not to reject this assignment on the basis of defendant's failure to plead contributory negligence as an affirmative defense. *See* Iowa Code § 619.17 (1981). Rather, we point out that it was defendant's burden to introduce evidence of contributory negligence.[2] To be entitled to a reversal on this assignment defendant would have to show that contributory negligence was established as a matter of law. This is an exceptionally heavy burden. *See* Iowa R.App.P. 14(f)(10). Defendant did not discharge the burden.

Defendant believes plaintiff should have done something between 1974 (when the Phase II project was constructed) and 1977 (when retrofitting was completed). Even if this claimed failure amounted to contributory negligence it occurred *after* the improper installation by defendant. Contributory negligence necessarily consists of actions which occur before or at the time of defendant's wrongful act. Hence defendant's claim in this record, if established, would not amount to contributory negligence. *See* 22 Am.Jur.2d, *Damages,* § 31 at 52–53 (1965) (distinguishing doctrine of avoidable consequences).

IV. Separate assignments challenge the damage award. The first complains of the fact that the trial court added three damage components together to reach the $992,878.84 award. The three components will be described further because each is the subject of a separate assignment. The first challenge to the damage award is a general one, whether damages were properly added together. Defendant supports this general damage assignment with two arguments.

---

**2.** There was no claim or plea of comparative negligence. *See Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982).

The first is a recasting of the lack of substantial evidence contention we rejected in division II above. We give it no further consideration.

Defendant then argues the trial court applied the wrong measure because the "cost rule" should have been used and was the sole measure of damages. *See Busker v. Sokolowski,* 203 N.W.2d 301, 304 (Iowa 1972). The trial court found that "no single rule of damage . . . will effect just compensation to the plaintiff." It reached this conclusion after finding for the plaintiff on each of two grounds: tort and contract. The trial court said: "Plaintiff's action against defendant . . . alleges breach of contract, breach of expressed warranty, breach of implied warranty, and negligence. To treat these theories separately as to damages seems inconsequential. *Recovery as to any would be identical.*" (Emphasis added.)

We disagree. There is a clear distinction between the two theories of recovery ". . . in that damages not even anticipated are recoverable in tort, while only such damages as were reasonably contemplated by the parties at the time of entering into the agreement are recoverable for a breach thereof." 25 C.J.S. *Damages* § 80 at 888 (1966). We have said that tort damages are not limited by the reasonable contemplations of the parties. Instead, the amount of direct injury is compensated, whether its extent was contemplated or not. *E.g., Cowan v. Western Union Telegraph Co.,* 122 Iowa 379, 386, 98 N.W. 281, 283 (1904). Damages for breach of contract, on the other hand, are limited to "those injuries which may reasonably be considered as arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of the parties, at the time of contracting, as a probable result of the breach." *Meyer v. Nottger,* 241 N.W.2d 911, 920 (1976). *See* 22 Am.Jur.2d, *Damages,* § 83 at 118–19 (1965).

The findings of the trial court, allowing damages without distinction between tort and contract are clouded by the foregoing distinction. We can agree that the cost of repair and lost rentals could well have been contemplated by the parties when the contract was made. Both might be routine elements of a damage recovery for breach of a construction contract. *See* 13 Am.Jur.2d, *Building and Construction Contracts,* § 76 at 75 (1964). It is another thing to believe the parties contemplated damages for diminution in value of the complex and its subsequent distress sale. While that element of damage is proper under the tort theory of compensation it does not necessarily arise under the contract theory. Would the parties to a construction contract contemplate that its breach would have such expensive and far-reaching repercussions? The trial court may have believed that these repercussions were within the parties' contemplation. It did not say so in the ruling.

The question then becomes whether the case must be reversed because of the trial court's error in concluding tort and contract damages were identical. The question is made more pointed by the failure to find the parties contemplated diminution in value as a damage eventuality. We think reversal is not warranted.

The damages awarded were allowable under the trial court's findings of negligence. The fact that the damage award may or may not be subject in part to a challenge under the contract theory does not detract from the adequacy of the findings under the alternative theory allowing recovery. The rule is that "(i)n case of doubt or ambiguity, findings will be construed to uphold, rather than defeat, the judgment." *Rank v. Kuhn,* 236 Iowa 854, 856, 20 N.W.2d 72, 74 (1945). *See Johnson v. Board of Adjustment, City of West Des Moines,* 239 N.W.2d 873, 878–79 (Iowa 1976); *Grall v. Meyer,* 173 N.W.2d 61, 63 (Iowa 1969).

Another principle lends support to upholding the damage award. It is not fatal that some uncertainty may exist in the specific amount of damages, so long as it clearly appears that some damages have been sustained. *See Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 403

(Iowa 1982); *Larsen v. United Fed. Sav. & Loan Ass'n,* 300 N.W.2d 281, 288 (Iowa 1981).

The purpose of a damage suit is compensation; the goal is to place the injured party in as favorable position as though no wrong had occurred. Damages are limited to the actual loss. *Dealer's Hobby, Inc. v. Marie Ann Linn Realty Co.,* 255 N.W.2d 131, 134 (Iowa 1977); *Schiltz v. Cullen-Schiltz & Assoc. Inc.,* 228 N.W.2d at 20–21. In defective construction cases, damages may include diminution in value, cost of construction, and completion in accordance with the contract, or loss of rentals. *Conrad v. Dorweiler,* 189 N.W.2d 537, 540–41 (Iowa 1971). Under some circumstances it is appropriate, because necessary in making the injured party whole, to award some combination of various damage elements. *See Conrad,* 189 N.W.2d at 540–41 (allowing cost of completion and lost rentals). Under other circumstances, because the allowance of one element is adequate to render the injured party whole, it is inappropriate to allow more than one element. *Busker v. Sokolowski,* 203 N.W.2d 301, 304 (Iowa 1972) (allowing only cost of repairs).

Under the facts here, taken in the light most consistent with the judgment, it was appropriate to allow tort damages on the basis of all three elements. All three flowed directly from the negligent construction. The elements were not duplicitous; plaintiff suffered each. All were necessary to restore plaintiff to the situation that would exist had no negligence occurred.

We find no merit in defendant's general challenge to the damage award.

V. The trial court found as a fact that there was a causal connection between the defective construction and the lost rentals. In a separate assignment the defendant asserts, as a matter of law, there was no such causal connection. Defendant assumes a staggering burden. Iowa R.App.P. 14(f)(10). For the reasons we mentioned in reciting the facts (vacancy experience of the two properties, etc.) we reject the assignment.

VI. Defendant also assigns error in another factual finding, that the diminution in value of the property was $650,000. The trial court found the fair market value of the property, but for the negligence, would be between 4.25 million and 4.95 million dollars. The repaired property sold for 3.43 million. Thus the trial court found the value disparity range between $820,000 and 1.52 million dollars. Saying it was not bound to award damages in the full amount, it allowed the $650,000 for this element.

Defendant separately attacks this element on three bases. Two of them ((1) there was no causal connection between the faulty construction and the diminution and (2) the cost of repairs is alone the proper measure) are contentions we have already rejected. Defendant also asserts the trial court considered the wrong date in determining the market value reduction.

The trial court determined the amount of diminution at the time it was sold (1978) rather than, as defendant would have it, when the complex was built (1974–75). Defendant relies on *Pogge v. Fullerton Lumber Co.,* 277 N.W.2d 916, 917 (Iowa 1979). *See also Duckett v. Whorton,* 312 N.W.2d 561, 562 (Iowa 1981). But neither *Pogge* nor *Duckett* answers the question of when the injury occurs. Defendant insists it was the date the complex was completed. Plaintiff argues the injury was a continuing one, which extended until the final distress sale.

Under the special facts here, limiting ourselves to the element of diminution in value, the trial court could find as it did. This aspect of the injury did not impact upon plaintiff so as to become final until the complex went into receivership and was sold.

VII. The trial court found the cost of repairs amounted to $105,344.26. This finding was supported by substantial evidence. Defendant's contention to the contrary is without merit.

VIII. Defendant argues that the plaintiff's failure to mitigate its damages should

bar recovery, "with the possible exception of the reasonable sum necessary to retrofit the walls." Plaintiff learned of the defective insulation in the spring of 1975, and did not commence retrofitting the walls with blown insulation until late 1977. The retrofitting was completed by Hamilton Glen's receiver in 1978.

The defense of mitigation (or avoidable consequences) must be both pled and proven by the asserting party. Iowa Code §§ 619.7, .8 (1981); *Iowa Power & Light Co. v. Bd. of Water Works Trustees,* 281 N.W.2d 827, 833 (Iowa App.1979). The duty of a plaintiff has been called one of "reasonable diligence." *See Whewell v. Dobson,* 227 N.W.2d 115, 120 (Iowa 1975), quoting 3 *Williston on Sales,* § 24–5 at 405 (4th ed.). *See also* 22 Am.Jur.2d, *Damages,* §§ 32–33 at 53–57 (1965); 25 C.J.S. *Damages* §§ 96–97 at 1000–04 (1966).

It seems that "a lack of sufficient funds will excuse an absence of effort to lessen damages." 22 Am.Jur.2d, *Damages,* § 32 at 55 (1965); *Accord, Wolf-Lillie v. Kenosha Cty. Sheriff,* 504 F.Supp. 1, 10 (E.D.Wisc.1980); *Lake Village Implement Co. v. Cox,* 252 Ark. 224, 231, 478 S.W.2d 36, 42 (1972).

We cannot say the trial court erred as a matter of law in resolving this issue in favor of plaintiff. According to plaintiff's evidence it took two years to verify the source of the problem, find a solution, and secure funds to pay for it.

IX. Without extending this opinion we find no abuse of the trial court's discretion in two challenged evidentiary rulings. *See Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 288 (Iowa 1979). Expert witnesses were properly allowed to testify on amounts of lost rentals and diminution of market values.

X. We note with some alarm that it took the trial court some 14 months to decide the case. Notwithstanding the complex and numerous issues, and recognizing the crushing demands on the time of our trial judges, this was simply too long for the parties to await a decision. *See Court*

Rule 200. The delay, though regrettable, does not call for a reversal.

AFFIRMED.