**IN THE COURT OF APPEALS OF IOWA**

No. 17-0293
Filed November 8, 2017

**WINDOW WORLD OF OMAHA,**
        Plaintiff-Appellant,

**vs.**

**JASON KOPIASZ and JUNE KOPIASZ,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Shelby County, Susan Christensen, Judge.

        A contractor appeals the district court judgment finding the contractor breached the terms of a contract and awarding the homeowners damages. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

        Michael J. Riley and Bryan D. Swain of Salvo, Deren, Schenck, Gross, Swain & Argotsinger, P.C., Harlan, for appellant.

        Kyle J. McGinn of McGinn, Springer & Noethe P.L.C., Council Bluffs, for appellees.

        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

Window World of Omaha sued Jason and June Kopiasz for unpaid balances on contracts entered into to replace windows, siding, soffit, fascia, and gutters and downspouts on the Kopiaszes' home. The Kopiaszes counterclaimed for damages, alleging Window World had breached the contracts. The district court held Window World breached the contracts and awarded damages, in part, to the Kopiaszes. Window World asserts the district court erred in holding it breached the contracts with the Kopiaszes or, alternatively, the district court incorrectly calculated damages.

## I. Background Facts and Proceedings

The Kopiaszes contacted Window World in 2011 after receiving hail damage to the siding of their home. A sales manager for Window World, toured the home and suggested the windows be replaced prior to any work on the siding. On November 16, 2011, the Kopiaszes entered into a contract to replace the windows on their home for $5500. The Kopiaszes paid $2750 upon signing the contract. The second half of the payment, $2750, which due upon completion of the project on March 7, 2012, was withheld by the Kopiaszes because they were dissatisfied with the work. Initially, the crank arms fell off of the window when the windows were opened; subsequently, most of the windows did not seal, and when the windows were closed and locked, the window and the gasket did not meet. Additionally, all of the windows leaked. A Window World representative visited the home approximately ten times to "fool around" with the windows. Eventually, because of the lifetime warranty, Window World offered to replace the window sashes, which it felt would be a good solution to the

problems. By June 2014, the sashes were obtained, but negotiations with the Kopiaszes had ceased, and the sashes were not installed.

Meanwhile, on April 4, 2013, the Kopiaszes entered into a contract with Window World to install vinyl siding, soffit, fascia, window and door wraps, and gutters and downspouts. The total price of the contract was $13,619 with $8000 paid upon signing. The Kopiaszes' home included fascia that had crown molding, so Window World determined the gutters were required to be strapped to the house. Strapped gutters are screwed into the roof, however. Window World advertising material does not include a home with gutter straps. The Kopiaszes objected to the gutters being strapped to the roof.

Because the siding, soffit and fascia was not installed in accordance with the Kopiaszes' design preferences, the remaining balance of $5619 was unpaid.[1] The Kopiaszes decided to engage another contractor, Jose Home Improvements, to address the problems they were having. Jose Rivera, the owner-operator, testified that he had twenty-six years of experience in construction, including soffit, fascia and window work, and had owned his own business for twelve years. Rivera "fixed" the work Window World had done on the soffit and fascia, charging the Kopiaszes $2200 for his work, and installed gutters and downspouts for an additional $1000, all in accordance with the Kopiaszes' wishes. Additionally, Rivera indicated $9300 would be a fair and reasonable estimate for replacing the windows, as he determined none of the windows could be salvaged for repair.

---

[1] Window World reduced the unpaid balance by $1750, as it had not installed the gutters and downspouts, which left an unpaid balance of $3869.

On October 12, 2015, Window World filed their petition against the Kopiaszes for the balance of both contracts, which totaled $6619.[2] The Kopiaszes counterclaimed for damages, alleging Window World breached the contracts between the parties. After a trial, the district court filed its order on December 23, 2016. Regarding the siding contract for soffit and fascia, the court granted the Kopiaszes' counterclaim in part, but ordered the Kopiaszes to pay Window World $669 of the $3869 demanded. Regarding the window contract, the court held Window World breached the contract, and awarded the Kopiaszes $9300—the estimated cost of replacing all the windows. The court offset the awards and ordered Window World to pay $8631 to the Kopiaszes.

Window World appeals.

## II.  Standard of Review

We review an action for breach of contract for errors of law. *Land O'Lakes, Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000). The trial court's findings of fact have the effect of a special verdict and are binding if supported by substantial evidence. *Id.*; *see* Iowa R. App. P. 6.907. Substantial evidence is such that a reasonable mind would accept it as adequate to reach a conclusion. *Hanig*, 610 N.W.2d at 522. We view the evidence in a light most favorable to the trial court's judgment. *Id.*

## III.  Breach of Contract

In challenging the district court's ruling that Window World breached the contracts, Window World notes the siding contract did not specify how the soffit

---

[2] The remaining balance due Window World on the siding contract was $3869, plus the remaining balance of the window contract of $2750.

and fascia were to be completed and the Kopiaszes did not indicate they wanted a particular style of soffit and fascia. With respect to the window contract, Window World asserts it completed all of the terms and conditions when installing the new windows and, once the windows began to leak, the Kopiaszes—with a lifetime warranty—did not let Window World rectify the situation by replacing the sashes.

The Kopiaszes contend Window World breached the window contract because Window World attempted to rectify the window leaks at least ten times, and yet, the windows continued to leak and remained inoperable. At that point, the Kopiaszes felt they had no choice but to engage with another contractor. Additionally, the Kopiaszes assert Window World breached the siding contract because they formed a reasonable expectation the final product would resemble the current style of their home based on Window World advertising materials and conversations with a Window World sales representative. The district court concluded neither product conformed "to the parties' express or implied agreement." We agree.

A breach of contract occurs when a party, "without legal excuse . . . fails to perform any promise which forms a whole or a part of the contract." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). Here, the record contains evidence that all of the windows installed by Window World leaked and needed to be replaced. June testified the arm used to crank the windows open and closed would fall off and hang outside of the window. She testified that the windows did not seal and there were nicks and tears in the outside sealant causing leaks. There were approximately ten attempts to remedy

these issues, including installing new cranks and sash for sealant, with no success. June testified, "They tried new cranks. They could not get those to work. Couldn't get them to install. They tried the new sash, the new window on the inside. Could not get that to install." At the time of trial, the windows were still not in acceptable working condition. The record contains substantial evidence Window World breached the window contract.

Further, there is substantial evidence Window World breached the siding contract for the soffit and fascia. The Kopiaszes contracted with Window World for soffit and fascia in the style represented in Window World advertising materials. The advertising materials do not contain pictures of a house with gutter straps. The Kopiaszes' soffit and fascia choice was such that Window World determined gutter straps were required, which would not match the other gutters on their home. The district court held, "[i]t is reasonable to assume defendants were expecting the new soffit and fascia to look like the rest of their home." Window World conceded it possesses more experience in this area than the Kopiaszes; therefore, Window World would know what type of gutters had to be installed as a result of the Kopiaszes' particular choice of soffit and fascia. Despite their superior experience, Window World did not indicate gutter straps were required prior to beginning their work. Therefore, the record contains substantial evidence Window World breached the siding contract by failing to install the soffit and fascia as expected. We affirm the district court's decision finding Window World breached the terms of the contracts with the Kopiaszes.

## IV. Damages

Window World next asserts even if it breached the contracts, the district court incorrectly assessed and calculated the amount of damages. Specifically, it asserts it offered to box in the gabled parts of the roof pursuant to the siding contract for the soffit and fascia for $600; however, the Kopiaszes decided to hire Rivera to remove and replace all the soffit and fascia for $2200. Regarding the window contract, Window World contends the original windows, with a lifetime warranty, cost $5500 and Rivera provided no basis for his estimate that replacing the windows would cost $9300. In awarding the Kopiaszes damages, district court held:

> Regarding the first contract for siding, the court is granting [Kopiaszes] counterclaim in part. In particular, the court offsets the amount requested by [Window World] to be $669.00 calculated as follows: $3869.00 (balance owing on first contract) less $3200.00 (work performed by Jose Home Improvement).
> As a result of the breach of contract on the second contract for windows, [Kopiaszes] were damaged. . . . The court is persuaded by the testimony of Rivera that the windows installed by [Window World] cannot be fixed and must be replaced in their entirety. . . . The court thus sustains [Kopiaszes'] counterclaim regarding the second contract for windows and finds the recommended remedy of $9300.00 is fair and reasonable to cover the cost of windows as the parties originally agreed. [Kopiaszes'] request to be reimbursed their deposit of $2750.00 previously paid to [Window World] is denied.

"An essential element of a breach of contract claim is that the breach caused a party to incur damages." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 468 (Iowa 2010). "The 'ultimate purpose' behind the allowance of damages is to place the injured party in the position he or she would have occupied if the contract had been performed." *Macal v. Stinson*, 468 N.W.2d 34,

36 (Iowa 1991) (citation omitted). In defective construction cases, damages may be calculated by diminution in value or by cost to repair when not disproportionate to the probable loss of value. *R.E.T. Corp. v. Frank Paxton Co.*, 329 N.W.2d 416, 421 (Iowa 1983). The party seeking damages has the burden to prove them. *Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 641 (Iowa 1996). "If the uncertainty is only in the amount of damages, a fact finder may allow recovery provided there is a reasonable basis in the evidence from which the fact finder can infer or approximate the damages." *Id.*

Based on Rivera's experience and familiarity installing windows, the district court's inference as to the replacement costs of windows was reasonable. The district court calculated damages using the remaining balances owed to Window World and the cost of work paid to Rivera.[3] The district court noted the original price of the contracts but did not utilize the figures in its calculation. Therefore, the court's damages figure, calculated by offsetting $669 owed to Window World from $9300 in replacement windows to be paid to the Kopiaszes, does not accurately place the Kopiaszes in the position they would have occupied if the original contracts had been performed. The Kopiaszes could

---

[3] The district court ordered:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that, regarding the first contract for siding, Defendants shall reimburse Plaintiff the sum of Six Hundred Sixty-Nine and no/100 Dollars ($669.00) as calculated above.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, regarding the second contract for windows, Plaintiff shall pay damages to Defendants in the sum of Nine Thousand Three Hundred and no/100 Dollars ($9300.00) as outlined above. . . .
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgments entered in this matter shall be offset with each other such that Plaintiff shall pay Defendants Eight Thousand Six Hundred Thirty-One Dollars ($8631.00), with interest. Judgment is entered accordingly and due as of the filing of this order.

have reasonably expected to pay $19,119 for both contracts with Window World.[4] Instead, once new windows are installed through Rivera, and all other work performed by Window World and Rivera, the Kopiaszes can reasonably expect to pay $23,250.[5] Therefore, to be made whole, the Kopiaszes should have been awarded $4131 in damages.[6] We conclude the district court erred in calculating damages and remand for entry of an amended damages award pursuant to this opinion.

## V. Conclusion

Because Window World failed to install soffit and fascia in accordance with the Kopiaszes expectation, and improperly installed windows causing leaks, Window World breached both contracts; therefore, we affirm on that issue. However, the district court incorrectly calculated damages awarded to the Kopiaszes, and we reverse and remand for entry of damages to the Kopiaszes of $4131.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[4] The total cost of the original siding contract plus total cost of the window contract ($13,619 + $5500 = $19,119).

[5] The siding down payment, plus the window down payment, plus the new siding Rivera installed, plus the new windows per Rivera's estimate ($8000 + $2750 + $3200 + $9300 = $23,250).

[6] The amount the Kopiaszes had to pay subtracted by the amount the Kopiaszes expected to pay ($23,250 – $19,119).