# IN THE COURT OF APPEALS OF IOWA

No. 23-2088
Filed October 1, 2025

**URSULA GARDNER,**
    Plaintiff-Appellant,

**vs.**

**DES MOINES STUCCO, LLC,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Howard County, Alan Heavens,

Judge.

A plaintiff appeals the district court's judgment on her breach-of-contract

claim.  **AFFIRMED.**

Kevin E. Schoeberl of Story, Schoeberl & Seebach L.L.P., Cresco, for

appellant.

Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines,

for appellee.

Considered without oral argument by Schumacher, P.J., and Buller and

Langholz, JJ.

**LANGHOLZ, Judge.**

This is a contract dispute between Ursula Gardner and Des Moines Stucco, LLC, the contractor she hired to install a stucco-like exterior to her newly built home. After a bench trial, the district court found that Des Moines Stucco breached the contract when it stopped work after completing only the first of two coats of stucco. But the court also found that Gardner failed to mitigate her damages because she did not hire a new contractor to complete the second coat for over eighteen months, causing the first coat to deteriorate and requiring the new contractor to do two more coats rather than just one. And so, in calculating the damages award, the court found that Gardner could have reduced her expenses with the new contractor by half if she had mitigated. The court also awarded only $1 in nominal damages—rather than the $5000 she requested—for Gardner's loss of the warranty she was originally promised under the contract because she failed to prove the value of the warranty. And the court denied Gardner's request for common-law attorney fees.

On appeal, Gardner challenges each of these adverse rulings. But this case was tried at law, so we are bound by the district court's factual findings if they are supported by substantial evidence. That sets a high bar on appeal that Gardner has not cleared. Substantial evidence supports the court's finding that Gardner failed to mitigate her damages and its calculation of the damages that could have been mitigated. So too does it support the court's finding that Gardner failed to prove the value of her lost warranty. And nothing in the record comes close to the egregious behavior needed to support Gardner's extraordinary request for common-law attorney fees. We thus affirm the district court's judgment.

### I.      Background Facts and Proceedings

Gardner retired from the Army in 2018 and planned to build her dream home on part of her family farm in Cresco, Iowa.  Gardner envisioned a Mediterranean-style home with a vineyard out back.  And she had the goal of opening a bed and breakfast in the future.

As part of the construction process, Gardner contracted with Des Moines Stucco in May 2019 to install a stucco-like exterior on her home.  Under the contract, Des Moines Stucco would install a stucco-like "exterior insulated finish system" that is made up of two coats: a base coat of foam and mesh and a finish coat.  And Gardner would pay a total of $64,784 in three installments of $21,594.67—one payment up front for materials, another after application of the base coat, and the final payment after completion of the project.  Gardner made the first and second payments without controversy.

But the relationship between Gardner and Des Moines Stucco broke down before the installation of the final coat.  So in late June 2019, Des Moines Stucco emailed Gardner to request 90% of the final payment before it would return to install the final coat to complete the project.  Gardner rejected the proposed modification of the contract.  And the next day, Des Moines Stucco gave Gardner two options: modify the contract as it had proposed or end the relationship.  Gardner responded by suggesting Des Moines Stucco may be in breach of their contract and highlighting that if it refused to complete the work she would have "an additional expense to bring[] in another contractor."

With the impasse still unresolved on July 9, 2019, Gardner issued an ultimatum that "if the crew does not return by July 24th to begin completing the

project, a district court case will be filed for the amount already received plus any other fees as no company is going to warranty Des Moines Stucco's work." Des Moines Stucco responded the same day, again summarizing its "many concerns" with returning and explaining that it does "everything possible to make every single customer we work with extremely happy" and that it felt it had "gone out of our way to do that for you but it is just not possible." Gardner's July 24 deadline came and went without Des Moines Stucco returning to complete the project.

It was another four months before Gardner filed this lawsuit. During that time, Gardner's attorney sent two letters to Des Moines Stucco demanding that it complete work on the project. In the second letter, sent on August 15, the attorney gave Des Moines Stucco until August 26 to complete the project and threatened that if it did not do so, Gardner would sue. Des Moines Stucco never returned to complete the project. And in mid-November, Gardner sued, asserting claims for (1) specific performance; (2) breach of contract; (3) breach of implied warranty of fitness for particular purpose; (4) breach of implied warranty of merchantability; and (5) breach of duty of good faith and fair dealing.

In March 2021—sixteen months after filing suit and nineteen after her final deadline for Des Moines Stucco to return to work—Gardner finally hired a new contractor to complete the installation of the stucco-like exterior. Gardner had first contacted two other potential contractors but did not reach an agreement with either of them to perform the work. Because of the condition of the already-applied base coat, the new contractor had to apply two more coats rather than just the one finish coat intended under the original contract between Des Moines Stucco and Gardner. Gardner thus paid the new contractor $52,400—significantly more than

the final payment of $21,594.67 she would have paid under the original contract. The new contractor completed the installation in June 2021—two years after Des Moines Stucco left it unfinished. And the same month, Gardner dismissed her specific-performance claim—two days before it was set to be tried to the court.

After a one-day bench trial on the remaining claims in November 2023, the district court found that Des Moines Stucco breached its contract with Gardner and entered judgment in her favor on her breach of contract claim. But the court awarded Gardner only $18,861.33 of the $50,060.13 in damages that she requested. The court disagreed with two aspects of her request.[1]

First, the court found that Gardner failed to mitigate her damages by unreasonably delaying in hiring a new contractor to complete the project. The court found that her new contractor "had to put two coats on instead of just the final coat" because "the cold weather over the winter of 2019 and then the winter of 2020 ruined the work that Des Moines Stucco had already done." And it reasoned that she "knew after July 24, 2019 that Des Moines Stucco was not coming back to finish the project" and her "decision to wait that long was not reasonable and undeniably made the project more expensive to complete." So the court found that Gardner could have reduced her expenses with the new contractor by half—from $52,400 to $26,200—if she had mitigated. And it calculated her damage award using that lower number.[2]

---

[1] The court agreed with the rest of her request, awarding another $14,255 in damages that are not at issue on appeal.

[2] The court subtracted the $21,594.67 that Gardner would have had to pay Des Moines Stucco under the contract resulting in an award of $4605.33 to cover Gardner's completion costs. Gardner does not dispute this part of the calculation.

Second, the court found that Gardner failed to prove that she lost $5000 from not receiving the workmanship and materials warranties from Des Moines Stucco that she was entitled to under the contract. The court noted that she failed to introduce any expert actuarial evidence or any other "credible basis to support her claim." And so, it reasoned that "[t]he warranties promised to Gardner are surely worth something, but with nothing in the record to determine how much that is, Gardner is only entitled to nominal damages of $1."

The court dismissed Gardner's other claims "as moot because they ask for the exact same damages" as her breach-of-contract claim. And the court denied her request for common-law attorney fees. It found that "[n]othing approaching" the heightened "level of culpability is part of the record in this case," reasoning that Des Moines Stucco had raised "legitimate issues" and that "Gardner was not awarded all of the damages that she requested."

Both parties moved to reconsider different parts of the damages award. The district court denied both motions. And only Gardner now appeals.

## II. Mitigation of Damages

Gardner first challenges the district court's findings that she (1) failed to mitigate her damages because she did not hire a new contractor sooner and (2) could have reduced her expenses with the new contractor by half if she had done so. The parties agree that this case was tried to the district court at law and that we thus review for correction of errors at law. *See R.E.T. Corp. v. Frank Paxton Co., Inc.*, 329 N.W.2d 416, 418–19 (Iowa 1983). The district court's factual findings "have the force of a special verdict and are binding on us if supported by substantial evidence." *Id.* at 419; *see also* Iowa R. App. P. 6.904(3)(a). "We view

the evidence in the light most consistent with the judgment." *R.E.T. Corp.*, 329 N.W.2d at 419. And when engaging in this review, we ask "whether substantial evidence supports the finding actually made by the trial court, not whether substantial evidence would have supported a different finding." *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 691 (Iowa 1999).

"A person asserting breach of contract has a duty to mitigate the damages." *Kuehl v. Freeman Bros. Agency, Inc.*, 521 N.W.2d 714, 719 (Iowa 1994). "This means that the nonbreaching party must take reasonable measures to lessen the damages caused by the other party's breach." *UE Loc. 893/IUP v. State*, 997 N.W.2d 1, 15 (Iowa 2023) (cleaned up). And "[t]his duty is one of reasonable diligence." *Id.* (cleaned up). Yet the breaching party who asserts "inadequate mitigation" has "the burden of pleading and proving" this defense. *Id.*

*Failure to Mitigate.* The district court found that Gardner failed to mitigate her damages caused by Des Moines Stucco's breach when it walked off the job in July 2019 because she did not hire a new contractor until after the base coat had sat exposed through two winters—causing deterioration of the base coat that required an extra coat and increased expense to complete the project. These findings are supported by substantial evidence. The new contractor—Gardner's own witness—testified that he had to apply any extra coat because of the condition of the base coat, which "was not thick enough" and "the mesh was showing through." And Des Moines Stucco's operations manager with decades of experience testified that in his opinion, no extra coat would have been needed if the finished coat had been applied in the five months after it stopped work on the project before the first winter. He explained that when the base coat sits "bare to

the elements for years" it forms "efflorescence" and described that "once it gets rained on, froze, heat, freeze, rained on, it starts to deteriorate; and it kind of turns to dust." Indeed, on cross-examination even Gardner successfully sought his agreement "that some of the issues here, the damage that was reflected, was because of the delay of—what a better word—putting the finishing product on."

On appeal, Gardner focuses on the testimony of her new contractor, suggesting that it shows that the extra coat "was due to an inadequate original base coat" and highlighting that he did not testify about the weather causing deterioration. She also argues that the district court should not have credited the testimony of Des Moines Stucco's operations manager about the consequences of letting the base coat sit in the elements over two winters. But the district court found the manager's testimony credible. And as "the trier of fact," that court—not us—"has the prerogative to determine which evidence is entitled to belief." *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996). And while Gardner is right that the new contractor did not testify about possible deterioration, neither did he opine that leaving the base coat exposed to the elements for two winters could not have caused the condition of the base coat that resulted in having to apply an extra coat.

Gardner also argues her conduct after Des Moines Stucco's breach was reasonable because she could not find a new contractor sooner and was still seeking to force Des Moines Stucco to return through her demands and eventual suit for specific performance. But the district court's contrary finding that her delay was unreasonable is supported by substantial evidence. Des Moines Stucco presented evidence that there were many other stucco contractors around Iowa

and that there were about five months between when it stopped work and the weather would get too cold for the work to be completed. There is no evidence Gardner made any attempt to find a new contractor during this time. While Gardner testified that she talked to two contractors sometime before hiring her new contractor in March 2021, the record does not show when she started those attempts. The record also shows that Gardner *was* able to hire a contractor despite any concerns about finishing another contractor's work. And there is no evidence that the contractor she eventually hired would have been unable or unwilling to do the project in the summer or fall of 2019 or why Gardner did not contact that contractor sooner.

Gardner's contention that it was reasonable for her delay seeking out a new contractor because she sought specific performance from Des Moines Stucco fares no better. For starters, Gardner has cited no authority from Iowa or any jurisdiction holding that a claim for specific performance could satisfy the duty to mitigate.[3] But even assuming that it could, the record shows that by June 28, 2019, the parties had made their intentions clear to each other. Des Moines Stucco told Gardner it would end their relationship unless she agreed to new payment terms. And she told Des Moines Stucco she was not open to renegotiating. Any possible reasonable doubt was removed by July 24—the deadline given by Gardner for Des Moines Stucco to return to work in her threat to sue. Her July ultimatum also shows

---

[3] Gardner also offers no explanation for how such a rule would be consistent with the limited availability of the extraordinary remedy of specific performance. *See UE Loc. 893/IUP*, 997 N.W.2d at 12 ("[W]hen damages would be adequate to protect the expectation interest of the injured party, equitable remedies like specific performance are usually precluded." (cleaned up)).

that she was already thinking about the need to hire someone else, threatening that in her suit, she would seek "the amount already received plus any other fees as no company is going to warranty Des Moines Stucco's work." Yet Gardner did not file suit until four months later—at the close of the temperature window when the project could still be completed before exposure to winter. Such a delay is not an exercise of reasonable diligence under these circumstances. Substantial evidence supports the court's finding that Gardner failed to mitigate her damages.

*Amount of Damages Reduction for the Failure to Mitigate.* The district court found that Gardner's failure to mitigate doubled her expenses with the new contractor. And so, in calculating her damages for completion of the project, the court cut the $52,400 that she paid in half to $26,200. Gardner argues that this lower damage award "is not supported by any evidence in the record or argument of the parties." We disagree.

Because the court found that Gardner's failure to mitigate caused her new contractor to apply two coats instead of one, a reduction in damages to account for the cost of the extra coat was appropriate. And the court could reasonably estimate that each coat would cost about half of the total cost of two coats. What's more, Des Moines Stucco presented evidence that the cost of completing the project—if she had done so in the summer or fall of 2019—would have been about $20,000. So the amount the court used for an appropriate reduction—more than $6000 higher—was well within the range of evidence supported by the record. Gardner had the chance to introduce her own evidence of the appropriate reduction to attribute to the extra coat. But she did not do so—choosing instead to rest on her argument that she did reasonably mitigate her damages.

In sum, Gardner has not cleared the high bar to show that any of the district court's factual findings about her failure to mitigate damages and the resulting reduction in her damages award are unsupported by substantial evidence. So we affirm this part of the district court's judgment.

### III. Amount of Damages for Lack of Warranties

Gardner also challenges the district court's award of $1 in nominal damages for Des Moines Stucco's failure to provide the workmanship and materials warranties promised under their contract based on court's finding that she had failed to prove her claim that the warranties were worth $5000. We review this factual finding too for correction of errors at law and are bound by it so long as it is supported by substantial evidence. *See UE Loc. 893/IUP*, 997 N.W.2d at 15. And again, substantial evidence supports the district court's finding.

To be sure, "the difficulty of proving the amount of damages from the breach of contract is no reason why recovery should be denied altogether, and a defendant who has voluntarily breached a contract cannot demand proof of plaintiff's damages therefrom with great particularity or exactness." *Natkin & Co. v. R.F. Ball Constr. Co.*, 123 N.W.2d 415, 423 (Iowa 1963) (cleaned up). But still, a "plaintiff must prove a definite or reasonable basis for the computation on which [she] relies." *Id.* (cleaned up); *see also Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220, 233 (Iowa 1977) (declining to "interfere with the amount" of a damages award calculated by the district court where "there was proof of a reasonable basis from which the amount of damages can be inferred or approximated"). Gardner did not prove *any* basis for computing her claimed value.

When asked by her own counsel at trial how she arrived at the $5000 value for her loss of the warranties, Gardner responded, "I guess just because right now I don't have a warranty on the house." She gave no other basis for valuing her loss at that amount nor any reason to believe that she has expertise at establishing the value of the warranties. Gardner asked no other witness about the value of the lost warranties. And she presented no expert testimony about its value. We do not suggest that Gardner had to present evidence in *all* of these ways or that she had to come to an exact dollar figure. But she had to present something more than rank speculation. And after scouring the record, like the district court, we see no reasonable basis on which to base a damages amount. We thus have little difficulty concluding that substantial evidence supports the court's finding that she failed to meet her burden of proof.

In an attempt to shore up this deficiency on appeal, Gardner highlights that the $5000 value "is approximately 7.7% of the total contract with Des Moines Stucco" and "represents $200 per year over the 25 year warranty lifetime." But while this math checks out, it gives Gardner no support. Setting aside her failure to make this argument in the district court, she points to no evidence explaining why either figure has any meaning in the valuation of a materials or workmanship warranty. We thus affirm the district court's award of damages for Des Moines Stucco's failure to provide the workmanship and materials warranties.

### IV. Common-Law Attorney Fees

Parties typically pay their own attorney fees absent a statute or contract that requires fee shifting. *UE Loc. 893/IUP*, 997 N.W.2d at 15. Gardner points to no such statute or contract here. Rather she argues that the district court should have

awarded her attorney fees under the "rare" common-law-attorney-fees exception. *Id.* "Common law attorney fees can only be awarded against a party whose behavior is extraordinarily culpable." *Id.* "[T]he conduct must exceed the kind of willful and wanton disregard that permits an award of punitive damages." *Id.* (cleaned up). Even "mere bad faith" is not enough. *Id.* at 16 (cleaned up). Rather, "the conduct must rise to the level of oppression or connivance to harass or injure another." *Id.* at 15 (cleaned up). We review the district court's denial of a request for common-law attorney fees de novo. *Id.*

On our de novo review, we agree with the district court that Gardner has failed to show that Des Moines Stucco's conduct came even close to this required level of extraordinary culpability. Gardner points to Des Moines Stucco's conduct stopping work on the project, failing to assist her in finding a replacement contractor, and saying through its operations manager that "I wouldn't refer her to nobody." To be sure, this conduct shows that Des Moines Stucco breached its contract—and Gardner obtained a judgment against Des Moines Stucco for that breach. But it does not rise to the level of oppression that would support a common-law-attorney-fees award. *See id.* We thus affirm the district court's denial of Gardner's request for common-law attorney fees.

**AFFIRMED.**